# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

ROSALIE H. SCHWARZSCHILD, ET AL. V. MYRTLE A. WELBORNE.

November 24, 1947.

Record No. 3230.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley, Buchanan and Staples, JJ.

The opinion states the case.

*Gordon & Gordon*, for the appellants.

*Charles E. Maurice*, for the appellee.

BUCHANAN, J., delivered the opinion of the court.

The appellants are four of seven complainants who brought suit against the appellee, as defendant, to enjoin her from an alleged violation of a restrictive covenant in a deed in her title. The trial court refused to grant the injunction for the reason, as stated in a written opinion, that the defendant had not violated the covenant, and also, that under the facts and circumstances it would be inequitable to grant it.

No evidence was taken but the facts were agreed in two written stipulations, the first of which contains this paragraph:

"1. That the sole question to be determined in this cause

is whether the defendant's use and occupancy of the premises No. 2708 Monument Avenue, Richmond, Virginia, constitute a violation of the terms of the restrictive covenants set forth in paragraph five of the bill of complaint, by which it is agreed the defendant is bound unless (a) the complainants are estopped by their conduct from enforcing the same or (b) there has been such a general change in the neighborhood as to render it inequitable to enforce the same."

Paragraph five of the bill of complaint, so referred to, alleges that the defendant acquired title to her property, No. 2708 Monument Avenue, in Richmond, by *mesne* conveyances from A. L. Straus, to whom it was conveyed by John P. Branch by deed dated February 5, 1912, which Straus signed and thereby agreed, for himself and his successors in title, to be bound by the covenants and restrictions copied in the margin[1], the essential features with which we are now concerned being the provisions that when the land is improved "there shall not be erected more than two (2) dwellings thereon," and "such improvements shall be a dwelling or two dwellings."

It was further stipulated that since January 5, 1945, the defendant "has conducted the business of renting rooms in

---

[1] "It is covenanted and agreed by the party of the second part that no part of the said land shall be sold, leased or otherwise disposed of at any time hereafter to any person who is a negro or of African descent.

"It is further covenanted and agreed that when the said land is improved by the said party of the second part or his executors, administrators, heirs, devisees or assigns, there shall not be erected more than two (2) dwellings thereon, and that the said dwelling or dwellings shall be erected in conformity with the building line as already established by the house now at the corner of Mulberry Street and Monument Avenue, which building line is Twenty Feet (20') distant from the North line of Monument Avenue, meaning thereby that the furthest projection (not including open porch or necessary steps of any building) shall not be nearer than Twenty Feet (20') to the North line of Monument Avenue, and that a strip of land not less than Five Feet (5') wide on the East side of the most eastern of said dwellings, and a strip of land, not less than Five Feet (5') wide on the West side of the most western of said dwellings, and a strip of land not less than Ten Feet (10') wide between the two said dwellings one to be left vacant, with the privilege to the party of the second part or assigns

her house to others, as is fully set forth in paragraph seven of her answer. The defendant has in the past and since January 5, 1945, served meals to persons renting rooms in her house. She is not serving meals at present to such persons, but claims the right to do so in the future."

In paragraph seven of defendant's answer, so referred to, she states that she does not maintain a boarding house, in the common acceptance of the term, but "has a very select number of persons who maintain their residence and dwelling place with her and they are all of the very highest type as is indicated by the following names: * * * ." Those named are a married couple and their son, two other married couples and two ladies who "hold responsible positions in the educational field." She further states that she "does not accept overnight guests, nor furnish meals, and those residing at her home have come with the idea of making their stay permanent so long as their business permitted. None have been with your respondent for less than three months."

It appears that the original complainants and the defendant own the entire frontage on the north side of Monument Avenue from Mulberry Street on the east to the Boulevard on the west, with the defendant's property located about the center of the block. John P. Branch was formerly the owner of all the real estate on which the several dwellings

of building One (1) dwelling on said lot and of leaving greater strips of land unimproved on the East and West sides of said dwelling.

"The party of the second part covenants and agrees that if the said land is improved, such improvements shall be a dwelling or two dwellings and that each dwelling shall be expensive as the adjoining dwelling (on the East) on this block, which covenants and restrictions are accepted as part of the considerations of this deed and are to run with the land.

"The party of the first part covenants and agrees that in selling the land on the West he will place thereon a restriction as to the same building lines and the vacancy of the Five Feet (5') immediately adjoining on the West the above described land, but not restricting as to the size of the lots on the West of the said land conveyed by this deed.

" * * * (English covenants)

"The party of the second part accepts the conditions of this deed and by joining in these presents hereby binds himself, his heirs, devisees, executors, administrators, personal representatives and assigns forever."

are located, and all the owners derive their titles from him as common grantor.

Several years before the defendant purchased the property it was claimed that the dwelling house and improvements on the lot had been so placed as to encroach slightly on the agreed building lines and by a deed dated October 1, 1921, all of the then owners of the frontage on the block, including defendant's predecessor, consented to the encroachments, so far as the present improvements were concerned, on condition that no further violations or non-observances of the said building restrictions be made or permitted.

The defendant purchased her property in December, 1944, for $32,500. Her house is described as a large, three-story brick building containing twelve rooms and seven bathrooms, including a shower installed on the third floor by the defendant after she bought the property. Since the defendant took possession, there have been no changes in the outward appearance of the building. The rose garden, lawn and general outward appearance are well kept. The occupants of the building are quiet, orderly and well-behaved.

On January 5, 1945, the defendant obtained from the city a certificate of occupancy permitting said premises to be occupied as a boarding house, which is defined by the City Code to be "a dwelling other than a hotel where for compensation, meals, or lodging and meals, are provided for four or more persons."

On February 4, 1945, she obtained a license to operate said premises during 1945 as "a hotel" of twelve rooms and seven bathrooms. To obtain a telephone, under war conditions, it was necessary to apply as "a hotel," which she did and her home is so classified in the telephone directory.

From January 5 to May 3, 1945, she inserted from time to time in the classified sections of the city newspapers this advertisement: "MONUMENT AVE.—An ideal home for those away from the comforts of their own. Room with or without bath. Meals that satisfy. 4-3300."

In 1943 the area in which the defendant's property is located was rezoned by the city from highly restricted residential property to an "E Multiple Family Dwelling District," to which change none of the complainants offered any objection or opposition. There are now numerous apartment buildings, boarding houses, rooming houses and various business activities in the neighborhood of this property, but only dwellings in this particular block.

After the hearing of the cause in the court below, Elsie Boyd Tucker and Sudie R. Wood, two of the original complainants, withdrew from the cause, and since July, 1945, Mrs. Tucker has been renting four rooms in her house to others, but no owner in the 2700 block other than Mrs. Tucker and defendant is taking in roomers or boarders.

The question presented by these facts is, as stated, whether the defendant's use and occupancy of her premises constitute a violation of the terms of the restrictive covenant. The defendant stipulates that she is bound by this covenant, unless the complainants are estopped, or there has been such a general change in the neighborhood as to render it inequitable to enforce the same. No estoppel has been shown. While there has been some change in the neighborhood, as the chancellor states in his opinion, we agree with his conclusion that "if this covenant be restrictive of the present use, it could not be said that the changed conditions destroy its purpose and object."

As we have seen, the language of the restrictive covenant is, "there shall not be erected more than two dwellings," and "such improvements shall be a dwelling or two dwellings."

The defendant contends that this restriction applies to the kind of building to be erected and not to its use after it is erected. We do not think so. A covenant that prescribes the type of building to be erected necessarily limits the use that may be made of it after it is erected. A covenant to build only a dwelling would not be kept by building a dwelling and then using it as a grocery store

or a funeral parlor. And so it is generally held. *Powers* v. *Radding*, 225 Mass. 110, 113 N. E. 782; *Strauss* v. *Ginzberg*, 218 Minn. 57, 15 N. W. (2d) 130, 155 A. L. R. 1000; 26 C. J. S., Deeds, section 164, pp. 520-26-27.

█ It is also the general rule that while courts of equity will enforce restrictive covenants where the intention of the parties is clear and the restrictions are reasonable, they are not favored, and the burden is on him who would enforce such covenants to establish that the activity objected to is within their terms. They are to be construed most strictly against the grantor and persons seeking to enforce them, and substantial doubt or ambiguity is to be resolved in favor of the free use of property and against restrictions. *Stevenson* v. *Spivey*, 132 Va. 115, 110 S. E. 367, 21 A. L. R. 1276; *Noble* v. *Kisker*, 134 Fla. 233, 183 So. 836; 26 C. J. S., Deeds, section 163, pp. 515-16; 14 Am. Jur., Covenants, etc., section 212, p. 621.

Of course "a thing may be forbidden by necessary implication as clearly and positively as by terms of express inhibition," and "if it is apparent upon the whole that the instrument carries by definite and necessary implication a certain meaning, then the thing afforded, or denied, by that meaning may be said to be as clearly and definitely extended, or forbidden, as if the language used had been in positive and definite terms of affirmation or negation." *Whitehurst* v. *Burgess*, 130 Va. 572, 107 S. E. 630.

There is no express inhibition in this covenant against the defendant's renting rooms in her house. Is it a necessary implication from the words of the restriction? Is it clear and not doubtful that by limiting the building on the lot to a dwelling or two dwellings, it was intended that nobody should dwell in the dwelling except the owner and his family? If that had been intended, it would have been easy to say so, and it would not likely have been left to the uncertainty of inference.

 A dwelling house, says Webster (New International Dictionary, 2d ed.) is, "a house, or sometimes part

of a house, occupied as a residence, in distinction from a store, office, or other building;" and a residence, says the same authority, is the "act or fact of abiding or dwelling in a place for some time; act of making one's home in a place; * * * . The place where one actually lives or has his home; a person's dwelling place or place of habitation; an abode."

Is the house on defendant's lot any the less a dwelling because others live in it with her and pay her rent for that privilege? Would it be converted into something else than a dwelling if she moved out and rented it to another family? Or more than one family? Does the covenant mean that she shall not rent her property? If not, then where is the language, or the necessary implication, forbidding her living in the property with those to whom she rents? It is stipulated that the defendant now is only renting rooms in her house, not accepting overnight guests, or furnishing meals; and those received there have come with the idea of making their stay permanent so long as their business permits. What is present in that arrangement that keeps this house from being a dwelling?

In *Fox* v. *Sumerson*, 338 Pa. 545, 13 A. (2d) 1, the restriction was that any buildings erected were to be nothing more than "private dwelling houses," and never altered into use for any other purpose. The defendants undertook to make inside alterations to accommodate two families. The court held the restriction did not so permit, but quoted from *In re James & Cutts*, 52 Ont. Law Rep. 453, that " 'an apartment house is none the less a dwelling house though occupied by a number of families but it is not a private dwelling house.' "

In *Gerstell* v. *Knight*, 345 Pa. 83, 26 A. (2d) 329, the restriction was that "one residence only" shall be built. The defendants originally constructed a residence which satisfied the restriction, but "in 1940 they proposed to alter the house into residences for two families." By a four to three decision the trial court was reversed and it was held that

the alteration was a violation of the restriction. The court thought that "residence" was a more restricted term than "dwelling," and said: "By using the word 'residence' and limiting its scope by the words 'one' and 'only' the parties agreed that during the existence of the covenant one place of abode only should be built for occupation by one person alone or with his family. If they had not intended so to limit the use of the land they would have used less restrictive words such as those considered in cases referred to in the argument. If, for example, they had restricted the use of the land to one dwelling house, or to one building, an apartment house would have been within this agreement." (p. 330).

In one of the dissenting opinions it was said: "The stipulation that 'one residence only shall be built' on the tract of land can be interpreted as meaning a residence for one family and it can also be just as reasonably interpreted as meaning one building used for residential purposes by one or more families;" and that if the grantor intended to restrict the building to a residence for one family only he could easily have said so. It was also said that there are considerations of public policy in interpreting an ambiguous provision like this one, and "since the building restriction before us admits with equal facility of two interpretations I would give it that one which best serves the public interest. There is in this country today a widely recognized shortage of suitable homes for people of moderate incomes, and a well maintained and fully occupied 'duplex' is both socially and economically preferable in a community to a large vacant house suitable for only one family and falling into decay because there is no single family which can afford to occupy it." (p. 332).

In *Charlotte Consol. Const. Co.* v. *Cobb*, 195 N. C. 690, 143 S. E. 522, it was held that a restriction that a lot of land "shall be used for residential purposes only * * * and there shall not at any time be more than one residence or dwelling house on said lot," was not violated by the erection

of an apartment house containing four apartments, each designed for the separate ocupancy of a family or family group. In the course of its opinion the court said: "A building ocupied by four families is no less a dwelling house than one occupied by a single family."[2]

In *Minister, etc., Reformed Protestant Dutch Church* v. *Madison Ave. Bldg. Co.*, 214 N. Y. 268, 108 N. E. 444, L. R. A. 1915F, 651, in discussing whether an apartment house was a dwelling house within a covenant against the erection of any building "other than brick or stone dwelling houses," the court said: "There is no way in which we can fairly ingraft upon these particular words considered by themselves any further limitations of definition which would make a structure used for ordinary dwelling purposes more or less a dwelling house merely because of the number of people who dwelt in it."

In *Austin* v. *Richardson* (Tex. Com. App.), 288 S. W. 180, the covenant required that the property be used for residence purposes only, and that no apartment house, or other business enterprise, be conducted or erected thereon. The lower courts enjoined the defendants from using the property for any purpose except a residence for a single family. On recommendation of the Commission of Appeals, the Supreme Court reversed, and amended the injunction to prohibit only the use of the property as an apartment house, saying:

"Renting rooms in his dwelling house by Austin as shown by the record and recited in the opinion of the Court of Civil Appeals is not engaging in a business enterprise in

---

[2] To like effect are: *McMurtry* v. *Phillips Inv. Co.*, 103 Ky. 308, 45 S. W. 96 ("residence purposes only"); *Johnson* v. *Jones*, 244 Pa. 386, 90 A. 649, 52 L. R. A. (N. S.) 325 ("nothing but a church or dwelling house"); *Hamnett* v. *Born*, 247 Pa. 418, 93 A. 505 ("no more than one dwelling house"); *Hamm* v. *Wilson*, 169 Ga. 570, 151 S. E. 11 ("only one residence shall be erected on each lot"); *DeLaney* v. *VanNess*, 193 N. C. 721, 138 S. E. 28, 57 A. L. R. 238 (no structure "except a dwelling house"); *Hunt* v. *Held*, 90 Ohio St. 280, 107 N. E. 765, L. R. A. 1915D, 543, Ann. Cas. 1916C, 1051 ("for residence purposes only"); *Hutchinson* v. *Ulrich*, 145 Ill. 336, 34 N. E. 556 ("a single dwelling").

contemplation of the restrictions contained in the covenant." (p. 181.)

In *May* v. *Dermont*, 114 Misc. 106, 186 N. Y. S. 113, a statute was construed which suspended summary eviction proceedings to recover possession of property "occupied for dwelling purposes." It was sought to evict a tenant who occupied one or two rooms in a 16-room house, and who had no other business "except the letting of rooms in this house." It was argued for the landlord that the house was thus occupied for business rather than for dwelling purposes, but the court said:

"While I recognize that the question is not free from doubt, I cannot agree with the landlord's contention. The tenant lives in the house, and it constitutes her dwelling. So far as the record shows, she manages the household affairs, and the other persons who occupy most of the rooms in the house are in a sense members of the household, and even of the family. There is no essential difference in the relations of the head of a household, which includes one lodger, who pays for his lodging, and one which includes a number of lodgers."

The complainants say of such cases that "we are not dealing with dwellings as opposed to apartments, but dwellings as opposed to business. An apartment is not a business, and cases which would allow apartments to be built under such a covenant are no authority for the proposition that a business would be allowed to move into a residential district."

We limit this decision to the stipulated use now being made by the defendant of her dwelling, which is renting rooms therein, and in that view we are unable to see how that activity converts the dwelling to a business use more than does an apartment house. Both consist of renting rooms. The renting here is more limited, results in no change in outward appearance, and in no disorder and in less congestion. If it is a business, it is one that does not cause the building to lose its identity as a dwelling, but merely enlarges its use as such.

The covenant here does not limit the use of the property to "a private dwelling," or to "a single family dwelling," or by any of the many phrases it would have been possible to use to narrow the restriction into the meaning urged by the complainants, and which are found in most of the cases where a more restricted use has been decreed. Not only did this grantor use no word of restriction, save the word "dwelling," but in the deed under which defendant claims he bound himself in selling the land west of the complainant's property to place thereon a restriction as to the same building lines, but nothing more. We see no requirement here that we broaden his words to prohibit a use that he did not in terms or by necessary implication himself prohibit.

There are some cases from other jurisdictions which have reached a different conclusion. In most of them, we think, the restrictive words and the facts and circumstances showed the intent of the grantor much more clearly than does the single word of this covenant. In *Nerrerter* v. *Little*, 258 Mich. 462, 243 N. W. 25, relied on by complainants, in which many of the earlier Michigan cases are cited, it was held that covenants against other than a dwelling house or a duplex dwelling house prohibited "the business or occupation of boarding and rooming a large number of children," whose noise disturbed the neighborhood. However, in a later case, *Boston-Edison Protective Ass'n* v. *Paulist Fathers*, 306 Mich. 253, 10 N. W. (2d) 847, 148 A. L. R. 364, the court held that a covenant against use or occupancy "except for a single dwelling house and dwelling house purposes only," did not prevent occupancy of the house by five catholic priests and their two servants. The *Nerrerter Case* and other cases were distinguished, and the conclusion reached that "it is obvious that each case * * * must be decided on its merits, considering the facts of the case." In *Powers* v. *Radding*, *supra*, the court was concerned primarily with the type and number of dwellings allowed by the restriction that "but one dwelling shall be erected." And

see *Voorhees* v. *Blum*, 274 Ill. 319, 113 N. E. 593; *Arnoff* v. *Williams*, 94 Ohio St. 145, 113 N. E. 661.

Complainants also insist that our holding here is contrary to those in *Whitehurst* v. *Burgess, supra,* and *Deitrick* v. *Leadbetter,* 175 Va. 170, 8 S. E. (2d) 276, 127 A. L. R. 849. We do not think so.

In the *Whitehurst Case* the defendant undertook to erect four stores on four lots in an area where the deed under which he claimed provided that "four adjoining lots will constitute a building site for one residence only." It was held that by necessary implication the provision prohibited the erection of stores on lots limited to residences. Of course.

In the *Deitrick Case* the restrictions involved were "that no part of said premises or of the building that may be erected thereon, shall be used for any purpose or in any manner that will create a nuisance, or make such use of said premises injurious or offensive to a good residential neighborhood," and "that said land shall not be used except for residential purposes." (175 Va. 170).

The defendant bought the property for a tourist home, and not as a private residence, and was proceeding to add two rooms to the house. To prevent this addition was one of the purposes of the suit, which would probably not otherwise have been brought. We said this tourist business was not a nuisance, "but if it is a business, then this lot is not being used for 'residential purposes' only. That it is a business can not be seriously questioned. The owner tells us that it was bought for business purposes." (175 Va. 174). And, "boarding houses are not private residences, and, on principle, it makes no difference if the boarder stays one day or two." (175 Va. 175).

The restriction there was broader than, and the use was different from, the restriction and the use in the case here. There no use was allowed "except for residential purposes." The covenant here limits the use to a dwelling, not to a private residence. The use here is of rooms rented,

not to transient guests, but as a dwelling place for persons whose stay is expected to be permanent so long as their business permits. A house is not being used for "residential purposes" by tourists who spend the night. Both the covenant and the use distinguish this case from that.

The defendant evidently contemplated a broader use of her property than renting rooms, and has served meals to her lessees since January, 1945, but was not doing so in November, 1945, and in her answer filed in July, 1945, she asserts that she does not maintain a boarding house in the common acceptance of that term. As stated, we hold that her stipulated activity of renting rooms does not violate the restrictive covenant in her title, and on that basis the decree complained of is

*Affirmed.*