# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

### HENRY E. STOKELY, ET AL. v. JOHN C. OWENS, ET ALS.

March 7, 1949.

Record No. 3438.

Present, All the Justices.

The opinion states the case.

*Ashburn, Agelasto & Sellers,* for the appellants.

*Herman A. Sacks,* for the appellees.

STAPLES, J., delivered the opinion of the court.

In this case we are met at the threshold with a motion of the appellees to dismiss the appeal on the ground that reasonable notice was not given to them, or their attorney, of the time and place at which the certificate of the proceedings in the case would be tendered to the judge for his signature. The evidence, which was heard by the chancellor *ore tenus,* is embraced in the certificate.

The appellants adopted the method of certifying the proceedings prescribed by Rule 21 of this court. Such certificates are required by the rule to be tendered for the judge's signature and to be signed by him within the time required by Code section 6252 for tendering and signing bills of exception. This section provides that bills of exception must be tendered the judge for signing within sixty days of the entry of the judgment complained of, and also that "before the court, or judge in vacation shall sign any bill of exception so tendered it shall appear in writing that the opposite party or his attorney has had reasonable notice of the time and place at which said bill of exception is to be so tendered to the court or judge; * * *."

Rule 21 of this court also provides in part as follows:

"Reasonable notice in writing shall be given to the opposite party or his attorney of the time and place at which said certificate is to be tendered."

It appears from the record and briefs of counsel that the appellants did not decide to apply for an appeal until only three days remained within which the tender could be made. It also appears that the transcript of the testimony was not obtainable until the last day for tendering the certificate.

Between nine and ten o'clock in the morning, appellees' counsel accepted service of notice in writing that the certificate would be tendered to the judge at four o'clock in the afternoon of the same day. The acceptance was under protest, however, because appellees' attorney did not consider the notice reasonable. However, he appeared at the time indicated and opposed the signing of the certificate by the judge.

The judge's certificate contains the following:

"I further certify that this certificate has been tendered to and signed by me within the time prescribed by Section 6252 of the Code of Virginia for tendering and signing bills of exception and certificates of record, and that reasonable notice in writing has been given to the attorney for the complainants of the time and place at which said certificate has been tendered."

In support of their motion to dismiss, appellees rely upon the case of *Ocean Acci., etc., Corp.* v. *Haley*, 158 Va. 691, 164 S. E. 538. There we held that, even though the trial judge signed the bills of exception, this was not sufficient to make them a part of the record because of the inadequacy of the notice under the circumstances of that case.

The circumstances were that, on the last day on which the bills could be tendered, opposing counsel was served with notice at 1:18 p. m. that at 2:45 p. m. of that day the bills would be tendered to the judge for his signature. At the time the notice was served opposing counsel was engaged in the trial of another case, but he nevertheless appeared

at 2:45 p. m. and objected to the judge signing the bills. Thereupon, in order that opposing counsel could continue the trial of his case, and also examine the bills which had been tendered if he had the opportunity, the matter was adjourned until 5:30 in the afternoon of the same day. The continued trial of the case, however, precluded any opportunity of examination. When the attorneys and judge again convened, two additional bills of exception were presented for the first time—one of them embracing all of the evidence in the case, and the other carrying the instructions. The record in the case shows that these two bills, which were not tendered until 5:30 p. m., and without any previous notice at all, occupied over a hundred pages in the printed record and 162 pages of the typewritten transcript. Under these circumstances, we held that the notice given opposing counsel was not reasonable.

The opinion in that case recognizes that the cardinal purpose of the notice is to permit counsel to examine the bills of exception and make such object thereto, if any, as he may deem proper. The notice should be given at such time as will afford opposing counsel an opportunity to appear at the time and place indicated. The giving of the notice, at a time when counsel actually was engaged in the trial of a case, that the tender would be made on that day and while the trial of the case was still in progress did not afford the required opportunity. We held it was not reasonable to impose upon opposing counsel the obligation to examine bills of the length and scope there involved at 5:30 o'clock after he had been engaged all day in the trial of another case. We, therefore, held the notice insufficient to justify the trial judge's signing the bills.

That the application of the rule is governed by the circumstances of each case is made equally clear in *Kornegay v. Richmond*, 185 Va. 1013, 1015, 1021, 41 S. E. (2d) 45, where, in an opinion delivered by Mr. Justice Eggleston, the following was said with respect to Rule 21:

"This rule provides that 'reasonable notice in writing shall be given to the opposite party or his attorney of the

time and place at which' a certificate is to be tendered to the judge of the trial court authenticating the incidents of the trial. This requirement is an important step in perfecting an appeal. Its plain purpose is to give opposing counsel an opportunity of examining the purported record and ascertaining whether it contains an accurate detail of what has transpired in the court below. But, important as it is, the requirement may be waived, particularly where its purpose has been otherwise accomplished. Certainly, that was the result here where counsel for the defendant in error had actual notice that the record was being compiled for authentication, and, after its completion and within an hour of its presentation to the judge of the trial court for certification, he actually examined its contents and made no objection thereto. This and nothing more could he have done if he had been given the required notice."

We are called upon therefore, in the case at bar, to consider and determine whether the giving of the notice and the subsequent tender of the instructions occurred under such circumstances as to require us to reject the conclusion of the trial judge that the notice was reasonable.

It seems that about 10:00 o'clock in the morning notice was given appellees' attorney that a tender of the certificate for signing by the trial judge would be made at 4:00 p. m. This allowed six hours for the attorney to arrange his affairs and other engagements so as to be present and remain there long enough to make the necessary examination of the certificate. No complaint is made here that any other duties or engagements of appellees' counsel interfered with his being present or examining the tendered certificate. Whether there was sufficient time after 4:00 o'clock to make such an examination depended, to a large extent, upon the size of the contents of the certificate tendered. It might depend also to some extent upon the general reputation of the court reporter for ability, accuracy, and integrity, in the reporting of court proceedings. The certificate tendered by appellants' attorney occupies only 40 pages of the printed record.

The certificate of the learned judge of the trial court shows that he was of the opinion that counsel for the appellees had ample opportunity to make a proper examination of the certificate tendered, and that the appellees were not in any way prejudiced by the fact that an earlier notice was not given. He therefore signed the certificate. His action in this respect is presumed to have been justified by the facts and circumstances within his knowledge. We cannot say that there is anything in the record which overcomes this presumption. We must therefore overrule the motion to dismiss.

The merits of the case turn upon the interpretation of two uniform restrictive covenants, designated "A" and "E", which are contained in the deeds of conveyance of lots to appellants as well as to other purchasers in the Suburban Park addition in the city of Norfolk. These restrictions are as follows:

"A. Except for the lots of ground hereinbefore reserved for apartments, all other lots shall be known as residential lots, and no structure shall be erected, altered, placed or permitted to remain on any residential lots other than a detached single family dwelling not to exceed two and one-half stories in height, and appurtenant outbuildings, including a private garage for not more than two cars.

"E. No noxious or offensive trade or activity shall be carried on upon any lot (residential or apartment), nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood."

This suit was instituted by the appellees to enjoin the appellants from making certain changes in a dwelling house which they own in said addition on the ground that the proposed alterations would render the building no longer "a detached single family dwelling," as required by restriction "A". They also prayed that the appellants be enjoined from using their said dwelling, which is located on residential lot No. 110 of said addition, "for any purpose other than residential purposes."

The circuit court denied the injunction sought to restrain

the appellants from completing the contemplated additions and improvements to their residence. No cross-error is assigned by the appellees to this denial and it must be taken that the residential character of the building will not be affected by the proposed alterations within the meaning of restriction "A".

The particular provisions of the decree complained of on this appeal are as follows:

"The defendants, Henry E. Stokely and Helen T. Stokely, are perpetually enjoined and restrained, so long as the restrictions affecting the above mentioned property are in effect, *from manufacturing frozen custards thereon and selling the same in cones on the premises, and from conducting any other commercial business therein.*" (Emphasis supplied).

The appellants contend that restrictions "A" and "E", above quoted, should be construed together; that "A" should be interpreted as applying only to the type of building which it is permissible to erect on residential lots in the addition, while "E" should be considered as constituting the *only* restriction on the *use* of the structures erected on the lots.

On the other hand, the appellees insist that the provisions in "A", limiting the character of the structures to be erected on the lots to "detached single family dwellings," must be construed as also limiting the use of any such dwellings strictly to residential purposes. They rely upon *Schwarzschild* v. *Welborne*, 186 Va. 1052, 45 S. E. (2d) 152. In that case, the provisions of the deed restricted the character of improvements which might be constructed upon the lots to "a dwelling or two dwellings." The deed contained no express restrictions on the *use* of the dwelling houses after they were erected. In the absence of any restrictions relating specifically to the *use* of the improvements, we said that "a covenant that prescribes the type of building to be erected necessarily limits the use that may be made of it after it is erected," and we held the effect of the covenants was impliedly to limit the use of the structures to dwelling purposes. We emphasized, however, that this conclusion was based upon a consideration of the instrument as a whole.

▉▉ We must, therefore, in the case at bar, consider all of the restrictions contained in appellants' deed. It is well settled that restrictive conveyances of this nature "are to be construed most strictly against the grantor and persons seeking to enforce them, and substantial doubt or ambiguity is to be resolved in favor of the free use of property and against restrictions." *Schwarzschild* v. *Welborne, supra.*

The trial court evidently concluded that restriction "A" should be construed as impliedly limiting the use of the lots to residential purposes exclusively. But the effect of this interpretation of restriction "A" is to render the provisions of restriction "E" meaningless. If the language of "E" is to be given any effect at all it can only be to limit the uses which may be made of residence buildings constructed on the lots.

What purpose could the grantor of the deed have intended to effectuate by incorporating in "E" the provision that *no noxious or offensive trade or activity* shall be conducted upon any residential lot, if *restriction "A"* is to be interpreted as excluding *all commercial activities or trades* thereon? The argument of appellees, that restriction "A" forbids any trade or commercial activity *of any kind,* would have had a great deal more force if restriction "E", prohibiting only those of a noxious or offensive kind, had been omitted altogether. Construing the instrument as a whole, we cannot escape the conclusion that the prohibition contained in "E" against noxious and offensive trades and activities must be interpreted as impliedly permitting trades or activities which are not noxious or offensive.

We are therefore constrained to hold that the sole purpose of clause "A" is to restrict the type of improvements which may be erected on the lot in question, and that appellants may carry on any trade or activity in the dwelling located thereon which is not, in fact, "noxious or offensive" or which does not constitute "an annoyance or nuisance to the neighborhood," as provided in clause "E".

▉ It appears from the record that the appellants intend to manufacture frozen custards in their residence building,

and sell the same in cones on the premises. No such business, however, had been conducted thereon at the time of the entry of the decree complained of. The appellees assert that they will conduct the business in such a manner that it will not be in violation of the prohibitions contained in restriction "E". Until it has been shown that the manner in which the business is carried on renders it noxious or offensive, or that it constitutes in fact a nuisance or annoyance to the neighborhood, the injunction prohibiting the use of the property for that purpose must be considered premature. Certainly, it cannot be said as a matter of law that the manufacture of frozen custard and its sale in cones constitutes a nuisance, *per se*, or that such business cannot be conducted in such a manner as not to violate the other prohibitions of clause "E".

The decree complained of will be amended by eliminating therefrom the provisions enjoining and restraining the appellants from using their dwelling house for the purposes above indicated or from conducting any other commercial business therein, but such action shall be without prejudice to the right of the appellees, by appropriate proceedings, to seek and obtain relief against any activities actually conducted on the premises in question which may be in violation of the prohibitions of restriction "E" contained in appellants' deed.

*Reversed in part, affirmed in part.*