COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, AtLee and Malveaux
Argued at Norfolk, Virginia

JEREMY KOOIMAN, ET AL.

v.        Record No. 1758-22-1

JEFFREY ORNOFF                                    MEMORANDUM OPINION[*] BY
                                                  JUDGE RICHARD Y. ATLEE, JR.
JEREMY KOOIMAN, ET AL.                                    JANUARY 30, 2024

v.        Record No. 1760-22-1

JEFFREY ORNOFF

FROM THE CIRCUIT COURT OF ISLE OF WIGHT COUNTY
Lawson Wayne Farmer, Judge

Norman A. Thomas (Norman A. Thomas, PLLC, on briefs), for
appellants.

Bryan S. Peeples (Pender & Coward, P.C., on brief), for appellee.

Appellants Jeremy and Lucy Kooiman appeal the circuit court's rulings granting injunctive

relief against them and denying injunctive relief against their neighbor, Jeffrey Ornoff. The circuit

court interpreted certain restrictive covenants to prohibit the Kooimans from renting out their

basement apartment for short-term rentals. The circuit court also found that Ornoff did not violate a

separate restrictive covenant that prohibited the use of cinder blocks on the "exterior side" of

buildings. On appeal, the Kooimans argue that the circuit court erred in its interpretation of the

restrictive covenants, by granting Ornoff relief that he did not seek in his complaint, and by denying

them due process by granting Ornoff relief requested post-trial without giving the Kooimans the

_____

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

opportunity to be heard. For the following reasons, we disagree and affirm the decision of the circuit court.

## I. BACKGROUND[1]

The Kooimans and Ornoff are neighbors in an Isle of Wight County subdivision that was platted and developed in 1966. Ornoff's property is designated lot 26, while the Kooimans own lot 25. Each of the properties in the subdivision are encumbered by eight deed restrictions that run with the land. At issue in this appeal are restrictions one, three, and four, which provide:

> 1. Said real estate shall be used solely and exclusively for residential purposes, and no structures shall be erected, altered, placed or permitted to remain on said real estate, other than a single family dwelling, not to exceed two stories in height . . . .
>
>     . . . .
>
> 3. All buildings on said lot shall be constructed of frame or masonry material or a combination of the two except that no exterior side shall be of cinder block, asbestos shingles, or combination asphalt siding material.
>
> 4. No trailer, basement, tent, shack, garage, barn, boat house or other outbuilding erected or placed on said real estate shall at any time be used as a residence, temporarily or permanently.

Both parties filed suit against the other seeking to enforce the restrictive covenants.[2]

### A. *Ornoff's suit against the Kooimans*

At the time Ornoff purchased his lot in 2012, the neighboring lots were empty. In 2016, the Kooimans purchased one of the empty lots next to Ornoff's property and built a house. The house

---

[1] The parties have a long and tortured history, including a separate lawsuit and complaints with zoning authorities. Because those details are not relevant to the issues before us on appeal, we do not include them.

[2] Both suits were consolidated and tried together, though we list the facts relevant to each case separately for clarity. The circuit court ruled against the Kooimans in both cases, and they appealed the rulings in both cases. We resolve both appeals in this memorandum opinion.

included a finished basement with a separate apartment,[3] which, beginning in 2018, the Kooimans listed for rent on both Airbnb and VRBO. Mr. Kooiman testified that they hosted Airbnb or VRBO guests "on average maybe two weekends a month, some months we have nothing and some months we have four." On occasion, the Kooimans also allow family members to stay in the apartment.

Ornoff filed a complaint seeking injunctive relief to enforce the restrictive covenants. Relevant here, his complaint asked the circuit court to "issue a permanent and perpetual injunction ordering [the Kooimans] to restore their basement apartment to an unfinished basement[ and] cease using any part of their home as a short-term rental business." It also asked for "such further and general relief as the nature of this case may require or this Honorable Court sees fit."

At trial, the Kooimans represented themselves. Mrs. Kooiman denied that their basement constituted a separate residence or apartment, though she admitted they host paying guests. Mr. Kooiman testified that they use the basement as part of their home. He testified that the paying guests lack the rights and privileges typically associated with a "residence," noting, among other things, that they do not have a lease, do not receive mail, cannot set house rules, and cannot control the HVAC or hot water temperature.

During closing arguments, the Kooimans relied on *Scott v. Walker*, 274 Va. 209 (2007), which held that a short-term rental of a house did not violate a "residential purpose" requirement in a restrictive covenant. They argued that the short-term rental of their basement was likewise a "residential purpose." They also argued that restriction four did not prohibit the short-term rentals because the paying guests never establish a "residence" in the basement.

---

[3] At trial, the Kooimans disagreed that it was an apartment. The basement includes two bedrooms, a full bath, a living room, a dining room, and a kitchen. It has a separate entrance, but it can also be accessed from the upstairs. The circuit court found it was an apartment.

Ornoff argued that payment for use of the basement was a commercial, rather than residential, purpose. He pointed out that the basement was used as a living area separate from the rest of the house, and he argued that restrictions one and four, when read together, prohibited using the basement as a short-term rental. He also distinguished *Scott v. Walker*, arguing that that case involved a single, ambiguous restriction, while this case involved two restrictions that, when read together, were clear and unambiguous.

The circuit court took the issue under advisement and allowed the parties to submit letters with additional case law and argument. On September 9, 2022, the circuit court issued its ruling orally. It acknowledged that restrictive covenants are not favored but noted that they are enforceable if they are clear in their meaning. It found that the language in restrictions one and four, when read together, is clear. The circuit court pointed out the inherent contradiction in arguing that the short-term rental is not a "residence" but that it is a "residential purpose." It made three specific rulings:

> One, the [Kooimans] may not permit any person to occupy the basement as a separate residence or for living purpose that are separate from the primary residence. It cannot be a separate residence or separate living area separate from the primary residence for anyone.
> Two, the [Kooimans] may not rent, lease, or any way convey the basement to be used as a separate residence for living purposes, no matter how brief.
> And, three, the [Kooimans] shall be responsible for any attorney's fees and costs associated with the enforcement of this injunction.

The circuit court refused to order the Kooimans to remove any structures within the basement that rendered it a separate residence. It noted that the restriction did not require the basement only be used for storage, and it acknowledged that there were ways that the Kooimans could use the basement as part of the primary residence. It asked Ornoff's counsel to prepare the order.

- 4 -

After the circuit court's oral ruling, but before a proposed order had been submitted to the court, the Kooimans filed two letters. First, the Kooimans objected to the proposed order. Next, they argued that Ornoff requested modifications to the final decree that are beyond what was requested in the pleadings, beyond the scope of the matters litigated during trial, and beyond the court's final ruling.

Ornoff then submitted a letter to the court along with multiple proposed orders. He informed the court that the Kooimans were now renting out the main house with the basement excluded. He argued that the Kooimans "intend to circumvent this Court's Order by using the basement as a residence for themselves while they rent out the main house to their customers." He asked the court to issue a modified order clarifying that no part of the Kooimans' property may be used as a rental.

The circuit court declined to issue the proposed orders and prepared its own order "in accordance with the Court's findings." The order stated:

1) The [Kooimans] are forever barred, restrained, and enjoined from renting out, leasing, or letting out the lower level (basement) of the property for any period of time; and
2) [The Kooimans] are forever barred, restrained, and enjoined from allowing any person other than the [Kooimans] to reside in the lower level of the property for any length of time.
3) [The Kooimans] are forever barred, restrained and enjoined from themselves using the basement as a separate residential space or permitting the basement to be used as a separate residential space while the remainder of the home is rented or occupied by others for any period of time.

As it did orally, the circuit court also ordered that anyone who violates the injunction will be responsible for attorney fees and costs expended in the enforcement of the order. The circuit court incorporated the objections that the Kooimans made to the proposed orders into the final order. The Kooimans now appeal this ruling.

B. *The Kooimans' suit against Ornoff*

In response to Ornoff's suit, the Kooimans filed a complaint against Ornoff seeking to enforce restriction three, which prohibits the use of cinder block on the "exterior side" of any building. The Kooimans' complaint asked the circuit court to order Ornoff to "remove any and all cinderblocks on both house and garage and replace with brick."

There was already a house on Ornoff's lot when he bought it. The walls of the house "are made out of wood and then covered with vinyl siding." The house, however, has a cinder block foundation, and the foundation extends above the ground. Sometime later, Ornoff built a detached garage. Like the house, the garage has a cinder block foundation that extends above the ground. Mr. Kooiman testified that as many of six rows of cinder blocks are visible above the ground. Ornoff offered photos of his home into evidence. The photos show between two and four rows of cinder blocks extend above ground. Ornoff also offered photos of other homes in the neighborhood that had similar cinder block foundations that extend aboveground.

Ornoff argued that restriction number three prohibited an entire side of a house to be constructed out of cinder block, but it did not prohibit a foundation from being constructed out of cinder block. The Kooimans argued that the provision was clear and prohibited cinder blocks on the side of a building. Since Ornoff has cinder blocks showing on the side of his home and garage, they argue that he was in violation of third restriction.

The circuit court ruled in favor of Ornoff and found he did not violate restriction three. It noted that the restriction did not mention a material requirement for the foundation; instead, it had a restriction for the "siding." The circuit court also noted that you could "hardly see" the cinder blocks, and it concluded that preventing the use of cinder blocks in the foundation is "not what the deed restriction intended." The Kooimans appeal that ruling.

II. ANALYSIS

A. *The circuit court properly interpreted the deed restrictions.*

The interpretation of a deed restriction is "a question of law that we review de novo." *Sainani v. Belmont Glen Homeowners Ass'n*, 297 Va. 714, 722 (2019). "Covenants, express or implied, which restrict the free use of land, are not favored and must be strictly construed." *Taylor v. Northam*, 300 Va. 230, 251 (2021) (quoting *Sloan v. Johnson*, 254 Va. 271, 274 (1997)). The burden is on the party attempting to enforce the "covenants to establish that the activity objected to is within their terms." *Sainani*, 297 Va. at 722 (quoting *Scott*, 274 Va. at 213). "Substantial doubt or ambiguity is to be resolved against the restrictions and in favor of the free use of property." *Barris v. Keswick Homes, L.L.C.*, 268 Va. 67, 71 (2004) (quoting *Anderson v. Lake Arrowhead Civic Ass'n*, 253 Va. 264, 269-70 (1997)). Nevertheless, Virginia courts will "'enforce restrictive covenants where the intention of the parties is clear and the restrictions are reasonable' and 'if it is apparent from a reading of the *whole instrument* that the restrictions carry a certain meaning by definite and necessary implication.'" *Sainani*, 297 Va. at 723 (quoting *Shepard v. Conde*, 293 Va. 274, 288 (2017)).

1. Deed Restrictions One and Four

The question before us is whether deed restrictions one and four prohibit the Kooimans from using their basement apartment for short-term rentals. Restriction one provides, "Said real estate shall be used solely and exclusively for residential purposes, and no structures shall be erected, altered, placed or permitted to remain on said real estate, other than a single family dwelling, not to exceed two stories in height . . . ." Restriction four provides, "No trailer, basement, tent, shack, garage, barn, boat house or other outbuilding erected or placed on said real estate shall at any time be used as a residence, temporarily or permanently."

Relying on *Scott v. Walker*, the Kooimans argue that the short-term rental of property is a "residential purpose," and they contend we are bound by the holding in *Scott*. They also argue that the short-term rental of their basement does not violate restriction number four because the transient guests do not establish a "residence" in their basement.

In *Scott*, the restrictive covenant stated that "[n]o lot shall be used except for residential purposes" and the property owners sought to rent out the entire house on a nightly or weekly basis. *Scott*, 274 Va. at 212 (alteration in original). Noting first that the language did not expressly prohibit the short-term rental of the property, the Supreme Court next found that the covenant also did not "by definite and necessary implication" prohibit such use. *Id.* at 217. It found that the term "residential purposes" was ambiguous in multiple respects. *Id.* Among the ambiguities was whether "residential purposes requires an intention to be physically present in a home for more than a transient stay." *Id.* And it noted that if there was a "duration of use" component, it was unclear "when a rental of the property moves from short-term to long-term." *Id.* at 218. Because of the ambiguities, the Supreme Court held that the restrictive covenant must be interpreted "in favor of the free use of property and against restrictions." *Id.* (quoting *Schwarzchild v. Welborne*, 186 Va. 1052, 1058 (1947)). Thus, it found that the restriction did not prohibit the short-term rental of the home. *Id.*

*Scott*, however, does not control the outcome here. The Court in *Scott* did not hold that short-term rentals are always a permitted residential purpose. Rather, the term "residential purposes"—in the context of the restrictive covenant at issue—was ambiguous and therefore did

not prohibit such use.[4]  *Cf. Schwarzchild*, 186 Va. at 1065 (noting "[a] house is not being used for 'residential purposes' by tourists who spend the night").  Where, as here, the facts and the restrictive covenants lead us to a different interpretation, *Scott* does not control the outcome of this case.  Although restriction one here is similar to the restrictive covenant in *Scott*, this case involves an additional restrictive covenant that leads us to a different outcome.  *See Mount Aldie, LLC v. Land Trust of Va., Inc.*, 293 Va. 190, 197 (2017) ("'[T]he whole of a deed and all its parts should be considered together' in order to determine the controlling intent." (quoting *Wetlands Am. Trust, Inc. v. White Cloud Nine Ventures*, 291 Va. 153, 161 (2016))).

First, *Scott*, like the out-of-state cases cited by the Kooimans, involved the short-term rental of the entire property, whereas the short-term rental here only involves the basement.[5]  The Kooimans contend that this is a distinction without a difference.  But unlike *Scott*, the deed here contains restriction four, which specifically addresses the use of the basement as a residence. *See Scott*, 274 Va. at 217 (distinguishing between the lease of the entire single-family dwelling at issue and the rental of individual rooms at issue in both *Deitrick v. Leadbetter*, 175 Va. 170, 173 (1940), and *Schwarzchild*, 186 Va. at 1054-55).  Thus, the distinction is of great significance.

---

[4] In *Scott*, the Court pointed out that "the Walkers do not rely on the Scotts' receipt of rental income as a basis for challenging the Scotts' use of their lot." *Scott*, 274 Va. at 213.  Thus, the Supreme Court did not resolve whether the receipt of rental income would mean that a property is not used for "residential purposes."  Although that issue was raised here, we do not decide that issue as it is not necessary to resolve this case. *See Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) ("[W]e decide cases 'on the best and narrowest grounds available.'" (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017))).

[5] *See, e.g.*, *Yogman v. Parrott*, 937 P.2d 1019, 1020 (Or. 1997) (*en banc*) (renting out entire beach house).  The Kooimans argue that *Lowden v. Bosley*, 909 A.2d 261, 262 (Md. 2006), is similar to this case because it had a restrictive covenant that prohibited use of a basement "at any time as a permanent or temporary residence."  But *Lowden*, like *Scott*, involved the rental of the entire property and did not require the court to consider whether renting the basement separate from the remainder of the house would violate that portion of the restrictive covenant.

Second, the Kooimans rely on the argument that the short-term renters do not establish a residence because their use of the basement is transient.[6] But the duration of use has never been the determinative factor in interpreting similar restrictive covenants. *Scott*, 274 Va. at 217; *see generally Deitrick*, 175 Va. 170; *Schwarzchild*, 186 Va. 1052. And contrary to the Kooimans' argument, the Court in *Scott* noted that the short-term renters "engage in activities normally associated with a dwelling place" and that "[i]t can be argued that a nightly or weekly rental is more than mere physical presence." *Scott*, 274 Va. at 217-18. Which is one of the reasons why the Court found "residential purpose" to be ambiguous. Here, restriction four removes any ambiguity regarding the duration of use required to establish a residence; it prohibits the use of the basement as a "residence, *temporarily or permanently*," (emphasis added), which suggests an intent to prohibit even transient use of the basement.

In fact, reading restrictions one and four together lead us to conclude that the restrictions were intended to create a blanket prohibition on all possible types of residences in the basement. Restriction four prohibits the use of the basement, or other structures, as a residence separate from the rest of the house. The temporary or permanent language in restriction four removes any time requirement to establish a residence. Further, restriction four lists other places, apart from

---

[6] The Kooimans also argue that the definition of residence in past cases requires more than a transient stay. In *Jernigan v. Capps*, 187 Va. 73 (1947), the Supreme Court relied on the dictionary definition, which defined residence as "[t]he place where one actually lives or has his home; a person's dwelling place or place of habitation; an abode." *Id.* at 80 (quoting *Webster's New International Dictionary* (2d ed.). But as noted in *Scott*, even the "people who rent the . . . property use it as a *temporary* place of abode and engage in activities normally associated with a dwelling place." *Scott*, 274 Va. at 217 (emphasis added). And the restriction at issue here prohibits the use of the basement as a temporary residence.

the basement, that cannot be used as a residence, including a trailer and a tent.[7]  Given that a tent

and certain types of trailers are typically for more transient uses, the inclusion of them in the list

further indicates that the duration of use is not a factor to be considered, or at the very least

transient uses of the listed structures are not to be excluded.  *See Sainani*, 297 Va. at 725-26

("When several nouns or verbs or adjectives or adverbs — any words — are associated in a

context suggesting that the words have something in common, they should be assigned a

permissible meaning that makes them similar." (quoting Antonin Scalia & Bryan Garner,

*Reading Law: The Interpretation of Legal Texts* 195 (2012)).  Finally, only a "single family

dwelling" is permitted.  *See Schwarzchild*, 186 Va. at 1063 (stating that renting of rooms was not

an issue because the covenants did not limit the property to single-family dwellings).

The deed restrictions here do not mention rentals, whether short-term or long-term.  But

reading restrictions one and four together lead us to the conclusion that the purpose of the

restrictions was less about preventing short-term rentals of property and more about preventing

the creation of more than one residence or living area on the property.  Regardless of how long

each individual guest stayed, the combination of guests using the basement separate from the rest

of the home created two separate residences on the property.  Thus, even though the deed

restrictions do not expressly prohibit short-term rentals, by definite and necessary implication,

---

[7] The Kooimans argue that the basement is not a residence because it does not have features such as the ability to receive U.S. mail or service of process, does not have its own WiFi, does not have control over the HVAC or hot water, etc.  But many of these features cannot be obtained in the other structures listed in restriction four ("trailer, basement, tent, shack, garage, barn, boathouse").  Thus, the Kooimans ask us to impose a definition of residence that is impossible to meet in the other structures.  If we adopted such an interpretation, it would be unclear what exactly restriction four prohibited.  *See CNX Gas Co. v. Rasnake*, 287 Va. 163, 168 (2014) ("Effect should be given to every part of the instrument, if possible, and no part thereof should be discarded as superfluous or meaningless." (citation omitted)).

the restrictions prohibit the use of the basement for short-term rentals.[8]  *See Bauer v. Harn*, 223 Va. 31, 39 (1982) ("[I]f it is apparent from a reading of the whole instrument that the restrictions carry a certain meaning by definite and necessary implication, then the thing denied may be said to be clearly forbidden, as if the language had been in positive terms of express inhibition.").

The Kooimans argue that the circuit court's interpretation of the deed restrictions is so broad that they are prevented from using the basement when family members visit them, for example during holidays like Christmas or Thanksgiving.  Although a trial court speaks through its written orders, *Kosko v. Ramser*, 299 Va. 684, 689 (2021), we can look to the circuit court's oral explanations to help us interpret that order.  Orally, the circuit court stated that the basement "cannot be a *separate* residence or separate living area *separate* from the primary residence for anyone."  (Emphasis added.)  The circuit court also noted certain uses of the basement would not violate the restrictive covenants because "it's being used as part of the primary residence."  The written order also prohibits the Kooimans from using the basement "as a *separate* residential space while the remainder of the home is rented or occupied by others."  (Emphasis added.)  Thus, looking at both the oral and written rulings, the circuit court's focus appeared to be on the use of the basement separate from the rest of the house.  Accordingly, we do not interpret the order so broadly as to prohibit the Kooimans from hosting their family, for example during Christmas, so long as that use is connected to their own use of the residence.

### 2.  Deed Restriction Three

Restriction three provides, "All buildings on said lot shall be constructed of frame or masonry material or a combination of the two except that no exterior side shall be of cinder block . . . ."  They point out that the restriction prohibits cinder blocks on the "exterior side" and

---

[8] The same rationale applies regardless of whether the Kooimans themselves stay in the basement and rent out the rest of the house or whether they stay upstairs and rent out the basement.

does not have an exception for the foundation.  Thus, they argue, the exposed rows of cinder block violate this restrictive covenant.

But the rule relating to the "exterior side" is itself the exception.  The restriction permits all buildings to be constructed of "frame or masonry material or a combination of the two," which includes cinder blocks.  It carves out an exception for the "exterior sides."  Thus, the restriction itself permits a cinder block foundation.  The question is whether the restriction intended to include the exposed foundation within the meaning of "exterior side."

When determining whether the exposed rows of cinder block foundation is included within the "exterior side," we look to the ordinary meaning of the words in the context in which they are used.  *See Berry v. Bd. of Supervisors of Fairfax Cnty.*, ___ Va. ___, ___ (Mar. 23, 2023) ("[W]ords in a statute [or ordinance] are to be construed according to their ordinary meaning, given the context in which they are used." (alterations in original) (quoting *City of Va. Beach v. Bd. of Supervisors*, 246 Va. 233, 236 (1993))).  Because these words are used in the context of constructing a building, we find the Virginia Construction Code ("VCC") instructive.[9] The VCC also incorporates the International Building Code, 13 VAC 5-63-10(B), which separately defines "exterior walls"[10] and "foundations."  Further, the VCC treats "exterior walls" and "foundations" as separate and distinct parts of a building, with separate chapters and regulations pertaining to each.  Accordingly, we find that the restrictive covenant did not intend to prohibit exposed rows of a cinder block foundation in its prohibition on the use of cinder

---

[9] The VCC is part I of the Uniform Statewide Building Code.  13 VAC 5-63-10(A).

[10] We recognize that restriction three uses the term "side" rather than "wall."  But in this case, we find the terms synonymous.  *See Webster's Third New International Dictionary* 2572 (2002) (defining "wall" as "one of the *sides* of a room or building that connects the floor and ceiling or *foundation and roof*" (emphasis added)).

- 13 -

blocks on the "exterior side" of buildings. Therefore, the circuit court did not err in denying the injunction and dismissing the Kooimans' complaint.

   B. *The circuit court did not err in barring the Kooimans from using the basement themselves while renting out the rest of the home.*

The circuit court prohibited the Kooimans from "themselves using the basement as a separate residential space or permitting the basement to be used as a separate residential space while the remainder of the home is rented or occupied by others for any period of time." The Kooimans argue that they were denied due process because Ornoff did not request this relief in his complaint and because they did not have a meaningful opportunity to litigate the issue because this relief was requested post-trial. We disagree.

Ornoff's complaint asked the circuit court to order the Kooimans to "cease using *any part* of their home as a short-term rental business." (Emphasis added.) This request alone is broad enough to incorporate the relief granted by the circuit court. But the complaint also sought the complete removal of the basement apartment and its return to an unfinished state. Instead, the circuit court fashioned a remedy short of going to that extreme, which it is permitted to do. *Hooper v. Musolino*, 234 Va. 558, 572 (1988) ("In the exercise of its equity jurisdiction, a court is afforded broad discretion in fashioning complete and just relief.").

Although the factual allegations in Ornoff's complaint focused on the Kooimans' renting out their basement (as opposed to them staying in the basement and renting out the upstairs of their home), the legal issue before the circuit court, both in the complaint and at trial, was the interpretation of the restrictive covenants. To interpret the restrictions, the circuit court had to consider whether the restrictions prohibited the use of the basement as a residence separate from the rest of the house. That legal issue does not change when it is the Kooimans, rather than the guests, staying in the basement. Additionally, considering Ornoff's request to completely

- 14 -

remove the basement apartment, the circuit court certainly had to consider the ways in which the Kooimans were permitted to use the basement.

We also find that the Kooimans were not deprived of a meaningful opportunity to be heard on the issue. Their argument is premised on their belief that the circuit court granted additional relief based on Ornoff's post-trial request and without allowing additional argument. But the circuit court did not grant additional relief. Though the written ruling specifies that the Kooimans cannot use the basement while renting out the remainder of the home, consistent with Ornoff's post-trial request, the circuit court's oral ruling included the same prohibition, albeit phrased more broadly. The oral ruling prohibited "any person" from occupying the basement separately from the primary residence.[11] Though the written ruling may have used different language, consistent with that in the post-trial request, the ruling is nevertheless consistent with the oral ruling, which was made prior to the post-trial request. Thus, the circuit court did not grant additional relief post-trial.

C. *The attorney fees issue is not properly preserved.*

The Kooimans argue that the circuit court erred by anticipatorily ruling that anyone who violated the injunction would be liable for attorney fees and costs expended in the enforcement of the order. That issue, however, is not preserved.

Rule 5A:18 provides, "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." The purpose of this rule "is to allow the trial court a fair opportunity to resolve the issue at trial, thereby preventing unnecessary appeals and retrials." *Hogle v. Commonwealth*, 75 Va. App. 743, 755 (2022)

---

[11] Orally, the circuit court ordered: "[T]he defendants may not permit *any person* to occupy the basement as a separate residence or for living purpose that are separate from the primary residence. It cannot be a separate residence or separate living area separate from the primary residence *for anyone*." (Emphasis added.)

(quoting *Creamer v. Commonwealth*, 64 Va. App. 185, 195 (2015)). "Rule 5A:18 requires the accused to *specifically* raise a legal challenge . . . to preserve that issue for appeal." *Hargrove v. Commonwealth*, 77 Va. App. 482, 504 (2023) (alteration in original) (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 357 (2011)).

The Kooimans did not object to the attorney fee issue. The Kooimans' objection[12] focused on the alleged infringements of their property rights and the interpretation of the deed restrictions. Though the objection mentioned "all reasons preserved in the record," they did not raise the attorney fee issue anywhere else in the record. Contrary to the Kooimans' argument, a general resistance to *any* relief is not the same as preserving a specific objection for appeal.

Alternatively, the Kooimans contend that the circuit court awarded the fees post-trial, they had no opportunity to object, and, relying on Code § 8.01-384(A),[13] they argue that the lack of opportunity to object should not prejudice them on appeal. But the circuit court announced its ruling, including on the issue of attorney fees, orally on September 9, 2022. Between then and entry of the final order, the Kooimans filed multiple letters with the court objecting to the contents of the proposed final order, which included the circuit court's ruling on attorney fees. The Kooimans also signed the proposed order and listed their objections. None of these letters or objections included an objection to "anticipatory attorney's fees." Thus, the Kooimans did, in fact, have the opportunity to object on that issue and did not do so.

---

[12] The circuit court dispensed with endorsement of the final order pursuant to Rule 1:13. It noted, however, that the Kooimans had written their objections on the order proposed by Ornoff, and it incorporated those objections into the final order.

[13] Code § 8.01-384(A) provides, in relevant part, "if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection shall not thereafter prejudice him on motion for a new trial or on appeal."

III. CONCLUSION

For the foregoing reasons, we affirm the decision of the circuit court.

*Affirmed.*