## Richmond

### LeRoy A. Bruton v. Euphia S. Wolter.

October 10, 1975.

Record No. 740969.

Present, All the Justices.

*Robert P. Boyle* (*Boyle & Wood*, on brief), for appellant.

*Francis L. Buck* (*William Massie Smith; Paxson, Smith, Boyd, Gilliam & Gouldman*, Inc., on brief), for appellee.

Per Curiam.

This case involves the construction of a restrictive covenant found in a deed from J. R. Wolter and Euphia S. Wolter, his wife, to LeRoy A. Bruton, whereby the Wolters conveyed to Bruton 45 acres of their 70 acre parcel of land. The Wolters covenanted with Bruton that their remaining portion, after the conveyance, should henceforth be subject to the following restriction:

> "[T]hat no more than one principal or primary residence, together with outbuildings for dependency uses of occupants of said residence, including buildings to house employees, guests, livestock and machinery, shall be erected or maintained thereon, and that said property will be used only for residential, ranching and agricultural uses and for no other commercial or mercantile uses."

It was the judgment of the court below "that the construction by the respondent upon her land of a guest cottage, in addition to a principal or primary residence to be occupied by the respondent owner . . . and the rental of said guest cottage, as is the respondent's announced intention, to not more than one family unit, not occupants of the principal or primary residence, would not violate the applicable restrictive covenant. . . ." The trial court denied an injunction prohibiting the construction by Wolter of the cottage, and Bruton appealed.

The facts are not in controversy. In his brief Bruton recites:

"After Mr. Wolter died, Mrs. Wolter decided to erect a residential complex on the portion of the property which she and Mr. Wolter had retained. This complex was to consist of a main residence, a guest cottage and a stable. Such a complex would be permissible under the terms of the covenant inasmuch as it contained a principal residence and outbuildings for dependency uses, *i.e.*, the guest cottage and the stable. The purpose for constructing the complex in the manner contemplated was to enable Mrs. Wolter to have a place for her children to stay when they came to visit or were taking care of her in time of illness.

"In the fall of 1972 it came to Mr. Bruton's attention that Mrs. Wolter was involved in a course of action which appeared to be a violation of the restrictions in said covenant. Mrs. Wolter had decided to rent separately the guest cottage, as a residence, to persons not members of her family, rather than confining it to guests as was her original intention. . . ."

Mrs. Wolter represents that she designed and began construction of a residential complex consisting of a main dwelling house, a guest cottage and a stable modeled after the English courtyard; that she is a lover of horses and wanted the stable close by her home; and that, being of uncertain health, she wanted a cottage nearby in which her sons or others could reside when her health required that someone live close-by.

Appellant concedes that the construction and use of a guest cottage for the alleged intended purpose would be permissible under the covenant. He contends, however, that until such time as the cottage is occupied by a member of Mrs. Wolter's family, a guest, an employee or by someone needed because of the condition of appellee's health, the cottage will have to remain vacant. The narrow issue is whether

Mrs. Wolter may rent her guest cottage while awaiting one of these eventualities.

The general rule regarding the construction and enforcement of restrictive covenants was stated by Mr. Justice Buchanan in *Schwarzschild* v. *Welborne*, 186 Va. 1052, 1058, 45 S. E. 2d 152, 155 (1947), as follows:

> "It is also the general rule that while courts of equity will enforce restrictive covenants where the intention of the parties is clear and the restrictions are reasonable, they are not favored, and the burden is on him who would enforce such covenants to establish that the activity objected to is within their terms. They are to be construed most strictly against the grantor and persons seeking to enforce them, and substantial doubt or ambiguity is to be resolved in favor of the free use of property and against restrictions. [Citations omitted]."

We think it clear that the language of the covenant, "one principal or primary residence", has reference to the main house, the mansion house or manor house. It would normally be the principal dwelling on the property and would be occupied by the person who owns and controls the land.

The covenant also contemplates the possibility of other homes or residences being constructed to house employees and guests. In fact, the number of houses that Mrs. Wolter could construct on her property is limited only by the number of guests that she might wish to entertain at any one time or employees that she might wish to employ and house. A house occupied by a tenant or an employee would be his or her principal residence, but neither it nor any guest house would be the principal or primary residence within the meaning of the covenant.

In addition to the principal residence, the buildings permitted by the covenant are described as outbuildings "for dependency uses of occupants of said residence", and include specifically buildings to house employees, guests, livestock and machinery. "Dependency" has a commonly accepted meaning when applied to buildings on residential property, and particularly when applied to farm or rural property. It means those supportive buildings which are necessary or desirable for the safe, efficient, convenient and comfortable occupancy, use and operation of the principal residence and the land or estate on which such residence is located. The number, type and character of dependency

buildings necessarily varies with the size and location of an estate and with the wealth, occupation and hobbies of the owner.

The guest house planned by Mrs. Wolter is 44 feet from her principal residence. These two buildings, together with the stable, constitute an architectural entity or English courtyard complex. The guest house and stable are dependencies of the principal residence to be occupied by Mrs. Wolter. The trial judge held that an occasional renting of the cottage would not change its status as a dependency or be in violation of the covenant. We agree.

Admittedly, the cottage is primarily designed and intended to serve a purpose permitted in the covenant and not for a commercial or a mercantile use. It would be unreasonable for Mrs. Wolter to defer building the cottage until the time arises when she actually needs it for reasons of health, safety or the entertainment of her guests. And it would be equally unreasonable to force her to keep it vacant until that time. If the cottage were unoccupied she would be faced with the problems of its deterioration, of vandalism and of the uncertainty of obtaining hazard insurance. We find no express prohibition in the covenant against the rental of the guest cottage, and such prohibition cannot be implied from its language. Mrs. Wolter is a widow, and her property is located in a rural section. If Mrs. Wolter were to permit a family to occupy this building rent free for her security and companionship, or as a safeguard against vandals and trespassers, there would be no violation of the covenant. Neither would there be a violation of the covenant if she were to rent the cottage under these or similar circumstances related to her occupancy of the principal residence. The cottage, as a dependency building, would be fulfilling one of its intended purposes.

We cannot say from a careful consideration of the language of this covenant that it was intended that no one would ever dwell in the guest cottage except as a guest or as an employee, or that under no circumstances would the cottage be rented. If that had been the intention of the parties, they could have easily said so.

The trial court resolved the substantial doubt and ambiguity in this case in favor of the free use of the property and against any restriction other than that which is clearly shown by the instrument in which the restriction is found. We cannot say that the determination of the court is plainly wrong. Therefore, its decree is

*Affirmed.*