## Richmond

RICHARD A. BAUER, ET AL.

v.

EDWIN HARN, PRESIDENT, ETC., ET AL.

January 22, 1982.

Record No. 791213.

Present: Carrico, C.J., Cochran, Poff, Compton, Thompson, and Stephenson, JJ., and Harrison, Retired Justice.

*Homer S. Carpenter (S. Page Higginbotham; Rice, Carpenter and Carraway; Higginbotham & Higginbotham,* on briefs), for appellants.

*Atwell W. Somerville (Somerville, Moore & Joyner, Ltd.,* on brief), for appellees.

COCHRAN, J., delivered the opinion of the Court.

In this appeal, we decide whether the Board of Directors of a nonstock corporation operating a private, residential community exceeded its authority by granting to persons having no legal or equitable title to real estate in the community the right to enter and use the recreational facilities and amenities upon payment of annual fees. The facts have been stipulated.

Lake of the Woods, a subdivision comprising more than 2,600 acres, is a "planned residential community" approved by the Board of Supervisors of Orange County pursuant to the County Zoning Ordinance. The community includes residential lots, streets, parks, recreational facilities, and "other amenities,"

all privately owned. With the exception of the residential lots, the property within the subdivision is owned by Lake of the Woods Association, Inc. (the Association), a nonstock Virginia corporation.

Security personnel employed by the Association control access to the community at its entrance gate. Only residential lot owners, tenants, employees of the Association, and "guests and invitees" of lot owners and the Association may enter the subdivision.

The recorded Declaration of Restrictions applicable to lots in the community sets forth the composition, purpose, and powers of the Association and states that approval for membership in the Association is required before a purchaser may acquire title to a lot. A Board of Directors elected by the members manages the affairs of the Association. The Association is the assignee of the subdivider which recorded the Declaration of Restrictions, and the parties agree that the restrictive covenants set forth in the Declaration are valid and enforceable.

On December 9, 1978, the Board, after conducting hearings, adopted a new program for the community entitled "Annual Guest Privilege Program." Under this program, available only to residents of the counties of Orange, Culpeper, Spotsylvania, Stafford, and Fauquier, and the cities and towns within their geographical boundaries, a committee of the Association reviews and approves applications for guest privileges submitted by persons who own no property in the subdivision. An applicant approved for the program acquires the right, upon payment of a fee, to use specified facilities of the community for twelve months. Participants in the program may apply for annual membership in one or more of the golf, swimming, or tennis activities. They may also bring a limited number of guests with them to use the facilities. The Board limited the program to 250 applicants, construed a participant's right to use the facilities as a revocable license, and provided that failure to abide by the rules and regulations of the Association would result in revocation of guest privileges. The Board published newspaper advertisements offering the program to the public in the specified area.

Richard A. Bauer and three other Lake of the Woods property owners,[1] filed a bill for declaratory judgment in the trial court

---

[1] Clifton P. Kesterson, William Heimbach, and F. Price Merrells.

against the members of the Board[2] seeking to have the guest program invalidated. The complainants maintained that the Board had no authority under the restrictive covenants and the Articles of Incorporation of the Association to sell to non-property owners the right of entry and access to community facilities.

The parties filed a pretrial written stipulation[3] that the only issue in the case was whether the Board had authority to establish the guest program, and that resolution of the issue turned upon the meaning of the word "invitees" as used in Section 11[4] of the

---

[2] Edwin Harn, President, Arthur H. Bourne, Ronald E. Duell, Robert B. Heiney, John M. Nolan, Donald Nowakoski, and Patricia Stivers.

[3] The stipulation stated:

"1. That the Court will hear the matter on the pleadings, on the attachments filed with the bill of complaint, and on such oral and/or written argument as the parties deem appropriate;

"2. The issue to be decided by the Court is whether the Board of Directors of Lake of the Woods Association, Inc. has the authority to establish and maintain the Annual Guest Privilege Program described in Attachment C; and

"3. Section 11 of the Restrictive Covenants of Lake of the Woods prescribes the ownership, use, and enjoyment of the streets, parks, and recreational amenities and resolution of the issue in this case rests upon the Court's interpretation of the word 'invitees' as used in said Section 11 of the Restrictive Covenants."

[4] Section 11 of the restrictive covenants reads as follows:

11. OWNERSHIP, USE AND ENJOYMENT OF STREETS, PARKS AND RECREATIONAL AMENITIES.

"A. Each of the streets in the Section or Subdivision designated on the plat is a private street, and every park, recreational facility and other amenity within the Section or Subdivision is a private park, facility or amenity and neither Declarant's execution or recording of the plat nor any other act of Declarant with respect to the plat is, or is intended to be, or shall be construed as a dedication to the public of any of said streets, parks, recreational facilities and amenities other than as reflected therein. An easement for the use and enjoyment of each of said streets and areas designated on the plat as parks is reserved to Declarant, its successors and assigns; to the persons who are, from time to time, members or associate members of the Lake of the Woods Association, Inc.; to the members and owners of The Lake of the Woods Golf and Country Club, Inc., its successors and assigns; to the residents, tenants, and occupants of any multi-family residential buildings, guest house, inn or hotel facilities, and all other kinds of residential structures that may be erected within the boundaries of the Section or Subdivision and to the invitees of all the aforementioned persons.

"B. The ownership of the recreational amenities within the Section and Subdivision, which may include but shall not be limited to lakes, dams, marinas, beaches, lake access tracts, golf courses, tennis courts, swimming pools, clubhouses, and adjacent clubhouse grounds, and campgrounds shall be in Declarant or its successors or assigns and the use and enjoyment thereof shall be on such terms and conditions as Declarant, its successors or assigns, shall from time to time license; provided, how-

restrictive covenants. Without specifically addressing this issue, the trial court ruled that the Board had authority under Section 11 to establish and maintain the program. By final order entered May 29, 1979, the court dismissed the complainants' bill of complaint.

The parties agree that the relationship between the Association and its members is contractual in nature. The Board members argue that the Association's Articles of Incorporation[5] conferred upon them the authority to establish the guest program. We reject this argument. The Association may exercise the broad powers conferred upon it by its Articles of Incorporation subject, however, to the contractual obligations embodied in the restrictive covenants. In the Articles of Incorporation, the first of the general objects and purposes set forth in Article II is to promote the community welfare and the interests of the property owners and "to exercise the powers granted to it in, or pursuant to," the restrictive covenants. Moreover, Article XI provides that the Articles of Incorporation may not be altered or amended to conflict with the restrictive covenants. Therefore, the contractual relationship established between the Association and its members may not be impaired by the exercise of corporate powers in derogation of the covenants.

Absent a challenge to the authority of an attorney to make them, stipulations are definitive of issues. *McLaughlin* v. *Gholson,* 210 Va. 498, 500, 171 S.E.2d 816, 818 (1970). *See also Henderson & Russell* v. *Warwick,* 217 Va. 486, 488, 229 S.E.2d 878, 880 (1976). In the present case, the parties by stipulation carefully and clearly framed not only the dispositive issue but also the means by which the issue was to be resolved. Accordingly, we will follow the terms of the stipulation by construing the word "invitees" as used in Section 11 of the restrictive covenants.

The term "invitee" in tort law describes the status of a person entering land in respect to the duties owed him by the own-

ever, that any or all of such amenities may be conveyed to the Lake of the Woods Association, Inc., which conveyance shall be accepted by it, provided the same is free and clear of all financial encumbrances."

[5] Under Article II, paragraph 11, the Association has the power "[t]o do any and all lawful things and acts, and to have any and all lawful powers, which a corporation organized under and by virtue of The Virginia Non-Stock Corporation Act, as amended, may do and have, and in general to do all things necessary and proper to accomplish the foregoing purposes . . . ."

er or occupier of the land. A person is an invitee when the landowner or occupier has extended an express or implied invitation to the visitor and the visitor enters pursuant to the invitation. *City of Richmond* v. *Grizzard,* 205 Va. 298, 302, 136 S.E.2d 827, 830 (1964). *See Colonial Natural Gas Company* v. *Sayers,* 222 Va. 781, 784, 284 S.E.2d 599, 601 (1981); Note, *Invitee Status in Virginia,* 44 Va. L. Rev. 804 (1958). However, a social guest is not an invitee, but a bare licensee to whom the possessor of land owes a lesser standard of care. *See Bradshaw* v. *Minter,* 206 Va. 450, 452, 143 S.E.2d 827, 828-29 (1965). Having stipulated that "invitees" and "guests" are entitled to enter the subdivision, the parties have thereby tacitly acknowledged that, at least for certain purposes, these terms denote separate categories of visitors.

 To determine the purpose of restrictive covenants we construe them in the light of the circumstances under which they were written. *Traylor* v. *Holloway,* 206 Va. 257, 259-60, 142 S.E.2d 521, 523 (1965). *See also Village Gate* v. *Hales,* 219 Va. 321, 325, 246 S.E.2d 903, 905 (1978); *Bruton* v. *Wolter,* 216 Va. 311, 313-14, 218 S.E.2d 438, 440-41 (1975); *Bank* v. *Standard Cary,* 208 Va. 298, 304, 156 S.E.2d 778, 784 (1967); *Elterich* v. *Leicht Real Estate Co.,* 130 Va. 224, 238-40, 107 S.E. 735, 739-40 (1921).

 Section 11 of the restrictions emphasizes the private character of the community. In 11A it is provided that all the streets, parks, recreational facilities, and other amenities are private property, but easements for the use of the streets and park areas are reserved as specified. Ownership of the recreational facilities has been conveyed to the Association pursuant to the provisions of 11B, and these facilities are to be used on such terms and conditions as the Association shall "license." Thus, the Association may impose fees upon those who use the facilities.

None of the restrictions employs the term "guests" to describe a class of persons authorized to use Association property. In view of the underlying purpose of the community, however, as shown by the restrictive covenants, it is apparent that the term "invitees" was not intended to mean only those persons who enter the subdivision upon express or implied invitation for business purposes. The common meaning of "invitee" is "an invited person; guest." Webster's Third New International Dictionary, 1190 (1969). Accordingly, we construe "invitees" as used in 11A to include social guests of the Association and of its members.

We will assume that the term "invitees" in Section 11A also includes business visitors such as tradesmen, repairmen, or service personnel, entering the community upon express or implied invitation, although there is nothing in Section 11 except the word itself to suggest that it was used in the context of business invitees. But the Board may not convert a restriction that merely grants easements to use streets and park areas into authority to enlarge the class of persons entitled to use other community facilities.

The Board members contend that the provision in 11A for members and owners of The Lake of the Woods Golf and Country Club, Inc., to have an easement over the streets shows an intent that non-residents be permitted to use the facilities. We think it is more logical to conclude that this was merely one specific exception written into the restriction. The exception is inapplicable because the parties stipulated that The Lake of the Woods Golf and Country Club, Inc., no longer exists.

██ The remaining aspect of the issue is whether purchasers of annual guest privileges under the Board's Annual Guest Privilege Program are invitees within the meaning of Section 11. The Board invited the public in five counties to buy annual guest privileges. A member of the public may acquire the privileges, which confer the right to use the facilities for twelve months, subject to rules and regulations of the Association. Once a person purchases the privileges, therefore, his right to be on the private property is no longer dependent upon an invitation; the holder of guest program privileges acquires an independent right to be on Association property and enjoy its facilities. A business invitee has no such right, and any social guest enjoys only such facilities as his host permits. The purchaser of guest privileges is more than just an invitee. He becomes a member of a new class of persons entitled to use Association facilities without becoming a member of the Association.

██ The Board members contend that Section 11B of the restrictive covenants gives them authority to license non-Association members to use the Association's facilities. Although this contention is beyond the scope of the stipulated issue, Section 11B sheds no light on the meaning of the term "invitees" in Section 11A. Section 11B establishes the Association's authority to prescribe terms for use of recreational facilities; it does not determine who may use the facilities.

Finally, the Board members urge that interpretation of the term "invitees" as denying them the right to establish the guest pro-

gram would be overly restrictive. They point to our decision in *Schwarzschild v. Welbourne,* 186 Va. 1052, 45 S.E.2d 152 (1947), as authority for the principle that restrictive covenants are not favored and should be strictly construed against the party seeking to enforce them.

We agree that restrictive covenants must be strictly construed against the party seeking enforcement, and that substantial doubt or ambiguity is to be resolved against the restrictions and in favor of the free use of property. *Schwarzschild, supra,* 186 Va. at 1058, 45 S.E.2d at 155. *See also Bruton v. Wolter, supra,* 216 Va. at 313, 218 S.E.2d at 440, *Riordan v. Hale,* 215 Va. 638, 641, 212 S.E.2d 65, 67 (1975), and *Traylor v. Holloway, supra,* 206 Va. at 259-60, 142 S.E.2d at 522-23. However, if it is apparent from a reading of the whole instrument that the restrictions carry a certain meaning by definite and necessary implication, then the thing denied may be said to be clearly forbidden, as if the language had been in positive terms of express inhibition. *Friedberg v. Building Committee,* 218 Va. 659, 665, 239 S.E.2d 106, 110 (1977), citing *Whitehurst v. Burgess,* 130 Va. 572, 576-77, 107 S.E. 630, 631-32 (1921). *See also Jernigan v. Capps,* 187 Va. 73, 78, 45 S.E.2d 886, 889 (1948) and *Deitrick v. Leadbetter,* 175 Va. 170, 175, 8 S.E.2d 276, 278 (1940).

The Board members conceded in oral argument that if they have authority to extend annual guest privileges to 250 applicants in a specified area they have authority to remove the limitation and sell such privileges to any number of non-residents wherever they may reside. They maintain that each lot owner may also sell guest privileges to any number of guests. As construed by the Board, all of these non-residents would be "invitees" eligible to use the recreational facilities of the Association. We reject this interpretation which, if approved, would permit the destruction of the entire concept of this planned residential community.

It is apparent from reading the restrictive covenants and the Articles of Incorporation that the Lake of the Woods community was established to provide privacy, privileges, and protection for those persons who acquired lots or occupied them as tenants. Economic pressure may have made it expedient to enlarge the number of persons paying for the maintenance of the facilities by extending guest privileges to members of the general public. Such a departure from the terms and purposes of the restrictive cove-

nants, however, requires amendment of the restrictions in the manner provided in Section 2A by majority vote of the lot owners.

We hold that the word "invitees" is not broad enough to include purchasers of privileges under the Annual Guest Privilege Program approved by the Board. Accordingly, we will reverse the judgment of the trial court and enter final judgment declaring the action of the Board invalid.

*Reversed and final judgment.*