## CIRCUIT COURT OF ACCOMACK COUNTY

Joan S. Kean

v.

Section I, Oyster Bay
Community Association

July 27, 1993

Case No. (Law) 91CL056

BY JUDGE GLEN A. TYLER

In this action at law for damages the issue is whether the Defendant, Section I, Oyster Bay Community Association (the "Association") must reimburse Joan S. Kean (the "Plaintiff"), a property owner in the subdivision, for repairs she made to a bulkhead along the waterway or canal front of her property.

Plaintiff owns two lots in the Oyster Bay Community in the Town of Chincoteague fronting on a tidal canal leading to Big Oyster Bay. Lot 57 was purchased in 1971, and Lot 56 was purchased in 1978, and the Court finds, for purposes of this action, that they are and have been owned by the Plaintiff. The waterfront of those two lots was originally bulkheaded by the developer of the subdivision, and the bulkhead has deteriorated during Plaintiff's years of ownership. Over the years, bulkheads along the canals fronting other lot owners and of common community property of the Association have also deteriorated, in most instances as a result of various natural causes and defects in the original construction and materials.

When the subdivision was first developed in 1969, it was subjected to a declaration of covenants in order to protect the value of the subdivision. The covenants require all lot purchasers to be members of the Association. The Association's functions, according to the covenants, are (1) to enforce the covenants, (2) to preserve the appearance of the subdivision, (3) to preserve the appearance and maintenance of the waterways, and (4) any other function a majority of the members

deems in the best interests of the community. The Association can also raise dues and funds as required, but without profit to any individual.

The covenants provide that waterways are reserved to the developer to the high water line (high tide), and they reserve to the developer easements for access to all lots that are on waterways. The easements are not specifically located. The covenants provide that they may be amended by the Association if approved by a majority of the members. There are 118 platted lots in the subdivision.

There is no indication in the evidence, testimony, or documents, one way or the other, whether each lot would have one vote, or whether an individual owner of more than one lot would have one vote or more than one vote, or whether several owners of one lot would share a vote, or whether they would each have a vote. The covenants state "All *purchasers* of lots . . . will agree, as a condition of their being allowed to purchase a lot, to become a *member* of the . . . Association." [sic] (Emphasis added).

The Association was incorporated as a Virginia corporation. Its charter states that among its purposes are to preserve the appearance and to maintain the bulkheads within the community. The charter does not specify whether this includes only the Association's community property or also private property within the community.

At an Association meeting held on March 28, 1981, at which 47 "lots" were represented, a quorum was declared, though the total number of lots then owned by purchasers was not recorded in the minutes. At that meeting, the Association adopted a resolution establishing a policy of paying, from Association funds, 50% of the cost of repair of bulkheads adjoining private property that were damaged as a result of natural causes. A practice and custom thereafter followed of repairing and paying regardless of whether a determination was made that the repairs were required as a result of natural causes. Certain bulkheads were selected for repair based on various criteria. For instance, damage as a result of erosion behind a bulkhead and exposure of anchors would not be repaired at Association expense.

On January 26, 1986, Plaintiff began to request that the bulkhead adjoining her two lots be repaired pursuant to the policy of the Association. She continued her demands from time to time up to the filing of this action at law.

There is no evidence that a lot owner was ever prohibited by the Association from repairing the bulkhead adjoining his lot at his own expense.

By letter agreement dated July 24, 1990, and executed by Plaintiff August 13, 1990, the Association and Plaintiff agreed that the Association would repair the bulkhead adjoining Plaintiff's property at prices negotiated with its contractors, but that Plaintiff was to reimburse the Association if a court of law ultimately invalidated the policy. The work was never carried out by the Association and its contractors. The Plaintiff later had her contractor, at prices negotiated by her, repair the bulkhead.

At a membership meeting on May 18, 1991, at which 75 "members" were present, the previous practice of the Association paying for repair of private bulkheads was ended.

Plaintiff makes her claim under a contract theory, basing the claim upon the covenants and the "policy" established by the Association in 1981, and basing it also upon the letter agreement of July 24 and August 13, 1990. However, the issue in this case is not whether the Association ever had or now has authority to use its money or bind its members to pay dues and assessments which could be used in part to repair bulkheads adjoining private property.

Bulkheads adjoining private property are owned by the owners of such property. Certainly such bulkheads are not community property. If they were, there could be no contest here. The developer retained ownership to the high tide line, and the bulkheads are part of the property purchased by lot purchasers. Bulkheads adjoining community property are not in contention here.

This case, therefore, presents an issue involving the interpretation of the covenants. We do not look to the articles of incorporation or by-laws of the Association. A corporate association may exercise broad powers conferred upon it by its articles of incorporation but subject to the contractual obligations embodied in the restrictive covenants. *Bauer v. Harn*, 223 Va. 31 (1982).

Regarding real property, a covenant is a promise in writing to do or refrain from doing something enforceable by an action for damages or suit for injunction or performance. Moynihan, *Introduction to the Law of Real Property* 105 (1962). In land developments, restrictive covenants are found in conveyances or other recorded documents relative to land conveyances. They limit the use of property, restrictive or

protective, in order to maintain or enhance property in the whole development by controlling its nature and use. Black, *Law Dictionary* (6th Ed. 1990). Typically, covenants are made to run with the land by an indenture, other than a conveyance, constituting a link in the chain of title recorded prior to conveyances intended to be affected thereafter, and that is the case here.

A covenant restricting the free use of land must be strictly construed. The burden is on him who seeks to enforce it to establish that what is objected to is within its terms, but the purpose or intent of the covenant must be determined from the language used in the light of the circumstances under which the covenant was written. *Jernigan v. Capps*, 187 Va. 73 (1948).

The covenants here do not provide, and they cannot be construed to provide, for all property owners, waterfront or not, to contribute to maintenance of private bulkheads through the Association. Vague language requiring the preservation of the appearance of the subdivision, waterways and the like is insufficient. The Association cannot in effect tax the property owners to repair the property of an individual or individuals after property owners have bought property in the subdivision under the Association's pretext of protecting the waterways for all to enjoy. Repairing a private property owner's property with Association funds is not similar to maintaining the waterways, such as by dredging or removing obstructions, or requiring that an owner keep up his own bulkhead, or the like. In the absence of an agreement to the contrary, existing restrictions cannot be amended unless all parties affected by the restrictions, or their successors, agree to the amendment. *Duvall v. Ford Leasing*, 220 Va. 36 (1979). Regarding the argument of the Plaintiff that there was a policy established that the Association should now honor, the Court is not persuaded. Even assuming that a majority of property purchasers could amend the covenants and establish a policy of paying for private bulkhead repairs, such an amendment was not properly carried out by a valid majority. In any case, Plaintiff simply did not produce evidence sufficient to establish as a fact that a majority of purchasers of lots approved the policy or any requirement that dues, fees, and assessments of the Association could be used to repair private bulkheads.

The Plaintiff's motion for judgment will be denied.