In re Evan Theodore McCONNELL,
Jr. and Margaret Elizabeth
McConnell.

Bankruptcy No. 95–14862–MVB.

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

July 8, 1996.

Ronald B. Cox, Woodbridge, VA, for Debtors.

Andrew G. Elmore, Chadwick, Washington, Olters, Moriarty & Lynn, P.C., Fairfax, VA, for the Association.

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Chief Judge.

Today we consider the objection to confirmation of the debtors' Chapter 13 Plan filed by Holly Forest Homes Association, Ltd. This matter came for hearing on March 26, 1996, at which time the parties represented to the court that the facts of the case are undisputed and the only issue is a question of law. The parties agreed to submit memoranda setting forth their respective positions. We took the matter under advisement and rendered our decision from the bench on June 4, 1996. This Memorandum Opinion incorporates our ruling from the bench.

## I. FACTS.

The pertinent facts are as follows. The debtors, Evan and Margaret McConnell, are the owners in fee simple of Lots 5 and 6, Section Three, in the Holly Forest Subdivision in Fairfax County, Virginia. The debtors built their residence on Lot 6, and Lot 5 is an adjoining undeveloped parcel. Lot 5 is a corner lot which fronts both Wolf Run Shoals and Sylvan Glen Lane. Sylvan Glen Lane is a street owned and maintained by Holly Forest Homes Association, Ltd. while Wolf Run Shoals is a publicly maintained street. Lot 5 does not have an access road to either street. The lots are five acre largely wooded parcels in a section of Fairfax

County not served by public sewer. In addition to being undeveloped, Lot 5 does not "perk."

The debtors filed a joint chapter 13 petition in this court on November 1, 1995. Their modified plan was filed on December 20, 1995, in which they propose to make payments of $1,570.00 per month to the trustee for a period of 60 months. The plan provides payment to Holly Forest Homes Association, Ltd. (the "Association") in the amount of $2,100 for delinquent homeowner's assessments. On January 19, 1996, the Association filed its objection to confirmation on the grounds that the plan fails to provide for its secured claim in the amount of $16,150.50.

The Association is a homeowners association composed of the property owners in Holly Forest Subdivision. In March, 1965, the owner of the development, Dowfair Company, filed a Deed of Dedication and Declaration of Reservations and Restrictive Covenants (the "Declaration") as recorded in Deed Book 2596, Page 228 among the land records of Fairfax County. The Declaration sets forth the rights of the Association and the obligations of the property owners.[1]

The Declaration provides in pertinent part:

The following Declaration of Reservations and Restrictive Covenants shall be binding on: all that land delineated on the plats of The Holly Forest Subdivision, filed in the Public Records of Fairfax County, Virginia.

NON–PROFIT CORPORATION AND MEMBERSHIP FEE

It is the intention of the Subdivider that a non-profit association to be called "The Holly Forest Homes Association, Limited," hereinafter called Association, be formed to care for the road easements, bridle path easements, boundary fences of each estate as such fences bound a road right-of-way as shown on the plats of the Subdivision, and all open areas maintained for the general good of the development and vacant and unimproved estates in The Holly Forest, whether such estates be owned by the Subdivider or not; to remove weeds and any unsightly or obnoxious thing therefrom and to do any other things and perform any labor necessary or desirable in the judgment of such non-profit Association to maintain the development in good repair and condition and to landscape the roadways in the platted land.

.    .    .    .    .

All persons purchasing property in the platted land, by acceptance of their deeds or execution of their purchase agreements, do agree to the formation of this non profit association and do agree to become a member thereof immediately upon its formation or upon signing their respective agreements to purchase an estate, and further agree to contribute their pro rata share of the funds necessary to the performance of its aforesaid functions. Membership fees for each estate in the platted land shall be paid annually and shall become a lien upon the applicable estate when the purchaser thereof is billed. Said membership fee shall be One Hundred Dollars ($100.00) per annum unless increased by a majority of the property owners in the Association, each estate being entitled to one vote regardless of how title thereto may be held but, no increase shall be made prior to vesting of full authority in the Association as described above.

The following Protective Restrictions and Covenants are hereby established, declared and prescribed to run with the land and to be binding on all parties and all persons owning estates or tracts in the Holly Forest or claiming under them until July 1, 1985, provided however that to change them at any time a majority of the owners of such estates or tracts shall vote to make such changes.

By virtue of the Declaration, the Association claims a secured interest in the debtors' real property in the amount of $16,150.50 for both annual and special assessments against Lots 5 and 6. The debtors do not dispute that as property owners in Holly Forest Subdivision they are subject to the Declaration and are required to pay both annual and

---

1. The rights and obligations of the Association and the owners are also governed by the provisions of the Virginia Property Owners' Associa-

tion Act. Va. Code Ann. § 55–508, et seq. (Michie 1995).

special assessments. However, the debtors maintain that they are not liable for equal assessments against both Lots 5 and 6 and challenge the Association's authority to levy a special assessment against only those property owners having access to the private roads of the subdivision.

The Association's claim against the debtors is based on annual assessments for each lot for each fiscal year of the Association from 1991 through 1995. According to the Association, the debtors owe a total of $3,100, exclusive of interest, in annual membership fees for both lots.

Additionally, in July, 1994, the Association, by vote of its members, amended the Declaration to approve a special assessment to make road repairs and perform maintenance on some or all of the private roads within the Holly Forest Subdivision which are owned by the Association. The amendment states that the road repair project was to be funded by an assessment charged to those "estates and tracts having addresses on, or driveway access to, the private roads of the Association." On August 16, 1994, the Association sent notices to each lot owner informing them that the Association was assessing each lot owner, at the rate of $6,000 per lot, for necessary road repairs and maintenance for all or part of the private roads within the Holly Forest Subdivision. The debtors were assessed $12,000 ($6,000 per lot) for the road project due to be paid by September 16, 1994. Following completion of the road project, the Association issued a credit to all lot owners in the amount of $365.53 per lot. The debtors never paid the assessment. According to the Association, the debtors' delinquent amount for the road project assessment is $11,268.94, exclusive of interest.

The debtors challenge their liability for both the annual and special assessments against Lot 5. Their argument is two-fold. First, the debtors argue that the language of the Declaration requires the owner-members to pay an annual membership fee for their "estate." The debtors contend that they own one "estate" in Holly Forest Subdivision which consists of two adjoining "lots," on which one residence is constructed. The Declaration states that "membership fees for each *estate* ... shall be paid annually." Thus, the debtors claim that they should only be assessed one annual fee and one special assessment against their single estate.

Second, the debtors challenge the Association's authority to levy a special assessment against only those property owners with "addresses on, or driveway access to the private roads of the Association." Further, even if the special assessment is valid, the debtors contend that the special assessment does not apply to Lot 5 because it does not have an address on, or driveway access to a private road. In any event, the debtors claim that the special assessment is vague as it applies to Lot 5 because it is undeveloped and does not percolate.

## II. CONCLUSIONS OF LAW AND DISCUSSION.

This court has jurisdiction over this controversy under 26 U.S.C. §§ 1334 and 157(a) and the general order of reference entered by the United States District Court for the Eastern District of Virginia on August 15, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (L).

### A. Restrictive Covenants under Virginia Law.

■■■ The fundamental rule in construing restrictive covenants is that the intention of the parties governs. That intention is gathered from the entire instrument by which the restriction is created, the surrounding circumstances and the objects which the covenant is designed to accomplish. *See Whitehurst v. Burgess,* 130 Va. 572, 107 S.E. 630 (1921); *Traylor v. Holloway,* 206 Va. 257, 259–60, 142 S.E.2d 521, 523 (1965); *Bauer v. Harn,* 223 Va. 31, 286 S.E.2d 192 (1982). *See also Village Gate v. Hales,* 219 Va. 321, 325, 246 S.E.2d 903, 905 (1978); *Bruton v. Wolter,* 216 Va. 311, 313–14, 218 S.E.2d 438, 440–41 (1975). In determining the intent of a restrictive covenant, specific words are given the common, ordinary meaning attributed to them at the time when the instrument containing the covenant was executed. *Marriott Corp. v. Combined Properties Ltd. Partnership,* 239 Va. 506, 391 S.E.2d 313 (1990). Nevertheless, if the language in a covenant is

ambiguous even when read in light of the context and surrounding circumstances, it should be construed against the grantor or persons seeking to enforce the restriction. *McIntyre v. Zara*, 183 W.Va. 202, 394 S.E.2d 897 (1990).

■ Applying these legal principles and considering the entire text of the Declaration, including the purpose and intent for the assessments, we find that the Declaration requires the debtors to pay the assessments against both Lots 5 and 6. The purpose of the Declaration is to require that each lot on the plat of the subdivision share equally in the annual assessments. Moreover, both the Declaration and the Virginia Property Owners' Association Act authorize the Association to levy special assessments against only those property owners who benefit from such assessment.[2]

The Declaration requires the Association to maintain the road easements, bridle path easements, boundary fences of each estate and all open areas "for the general good of the development and vacant and unimproved estates" in the subdivision. The Deed of Dedication for the Holly Forest development provides that the parcel of land be subdivided into "lots" in accordance with the metes and bounds established in the plat of the subdivision. The plat of the subdivision is attached to the Declaration and divided into numbered lots each of which is approximately five acres. The Declaration requires a membership fee be paid annually "for each estate in the platted land" to fund the Association's functions.

Throughout the Declaration, the restrictive covenants most often employ the term "estate" to describe the property purchased by an owner. Occasionally, a restriction refers to "estates or tracts," "said premises" or "parcel." None of the restrictions employs the term "lot." The common meaning of "estate" is "the property or piece or aggregation of property in lands or tenements."

Webster's Third New International Dictionary, 773 (1993). The common meaning of "lot" is "a measured parcel of land having fixed boundaries and designated on a plat or survey." Webster's Third New International Dictionary, 1338 (1993). Thus, by their common definitions these terms may be used interchangeably to refer to one piece of property. Accordingly, we construe the terms "estate" and "lot" to be synonymous as those terms are used in the Deed of Dedication and the Declaration.

We agree that restrictive covenants must be strictly construed against the party seeking enforcement, and that ambiguity is to be resolved against the restrictions. *Schwarzschild v. Welborne*, 186 Va. 1052, 1058, 45 S.E.2d 152 (1947). However, we think that a logical reading of the document as a whole indicates that use of the term "estate" in the Declaration refers to one lot as delineated on the plat of the subdivision. For example, in paragraph one, property owners are prohibited from further subdivision of an "estate." That paragraph states:

> None of the estates shall at any time be subdivided into two or more ownerships and no building site shall be less in area than five (5) acres ... [a] single estate together with contiguous portion or portions of one or more estates in the same block may be used for one building site.

Paragraph three relates to set back lines and states that "[w]here two or more estates are acquired as a single building site, the side building lines shall refer only to those bordering the adjoining property owners." Finally, the Declaration provides that annual membership fees become a lien upon the "applicable estate" when the purchaser is billed. It is clear from these provisions that use the of the term "estate" refers to only one "lot." To conclude otherwise would make these provisions meaningless.

■ We also disagree with the debtor's reading of the Declaration as exempting from

---

2. Section 55–514 of the Virginia Code provides:
   In addition to all other assessments which are authorized in the declaration, the board of directors of an association shall have the power to levy a special assessment against its members if the purpose in so doing is found by

the board to be in the best interest of the association and the proceeds of the assessment are used primarily for the maintenance and upkeep, including capital expenditures, of the common area.
Va. Code Ann. § 55–514 (Michie 1995).

liability those lots that are undeveloped. There is no provision in the Declaration providing for such an exemption. To the contrary, the Declaration provides that the purpose of the Association is to maintain the subdivision "for the general good of the development and vacant and unimproved estates." Furthermore, the amendment provides that the special assessment shall be levied against "each estate or tract having an address on, *or* driveway access to, the private roads of the Association." The tax assessment information from the Fairfax County tax records indicates that Lot 5 has an address of 7116 Sylvan Glen Lane, a private street which is part of the subdivision. Thus, under the terms of the amendment, Lot 5 is subject to the special assessment.

### B. *Reciprocal Negative Easements.*

■ Nevertheless, the Declaration does not directly address the questions raised in this case as to whether undeveloped lots are subject to assessments equal to those of developed lots or whether owners of two lots must pay equal assessments for both lots? We think that the doctrine of reciprocal negative easements applies in this case and requires the debtors to pay equal assessments for Lot 5.

■ A reciprocal negative easement is a covenant which equity raises and fastens upon the title of a lot or lots carved out of a tract that will prevent their use in a manner detrimental to the enjoyment and value of neighboring lots sold with express restrictions in their conveyance. 20 Am.Jur.2d *Covenants* § 157 (1995). A reciprocal negative easement arises where there is a common grantor, a general plan or scheme of restriction, and restrictive covenants running with the land in accordance with the plan. *Minner v. Lynchburg,* 204 Va. 180, 129 S.E.2d 673 (1963). Thus, where there is a common owner of related parcels of land, who, in the various grants of the lots, included some restriction, either affirmative or negative, evidencing a scheme or intent that the entire tract should be similarly treated there is annexed to the entire tract a reciprocal negative easement. The reciprocal negative easement requires that the burden that the grantor placed expressly upon the lots conveyed is conveyed by operation of law reciprocally upon all other lots in the tract even where there is uncertainty. *See* 20 Am.Jur.2d *Covenants* § 157 (1995) and cases cited therein; *see also Minner v. Lynchburg,* 204 Va. at 187–88, 129 S.E.2d 673 (if a party claiming the benefit of an implied restrictive covenant proves a uniform scheme of development to have been intended, equity will carry out this intent against a party who had notice of the restrictions, even though not contained in his deed).

In this case, it was the intention of the common grantor, Dowfair Company, to create a scheme or plan for the entire subdivision that is to run with the land. The scheme contained in the Declaration contains both negative and affirmative restrictions for the benefit of all of the Association's member/owners. The debtors took title to both lots with actual notice of the restrictions. Thus, assuming that the Declaration was unclear in its application to undeveloped lots, Lot 5 is subject to the restrictions contain in the Declaration by means of an equitable easement. Therefore, the Association has the right to enforce the restrictions against the debtors for both Lots 5 and 6.

### III. *CONCLUSION.*

Accordingly, confirmation of the debtors' Chapter 13 plan of reorganization is denied with leave to amend the plan to provide for Holly Forest Homes Association's secured claim in the amount of $16,150.50 plus interest at a rate of eight percent (8%) per annum.

An Order has been previously entered.